**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABDERRAHMANE FARHANE,<br><br>       *Defendant.* | **05-CR-673 (LAP)** |
| ABDERRAHMANE FARHANE,<br><br>       *Petitioner*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>       *Respondent.* | **18-CV-11973 (LAP)** |

**PETITIONER'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR ORDER CONCERNING**
**SCOPE OF WAIVER OF ATTORNEY-CLIENT PRIVILEGE**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.  Criminal Proceedings................................................................................................ 2

    II.  Habeas Proceedings and Appeal .............................................................................. 3

    III. Remand Proceedings................................................................................................ 4

ARGUMENT ....................................................................................................................... 5

    I.  Mr. Farhane Waived Privilege Only As To Communications With Trial Counsel
    Regarding The Potential Denaturalization and Deportation Consequences Of His Plea ... 6

        A.    Implied Waivers Extend Only To Materials On Which A Party Relies Or
            Which Must Be Disclosed As A Matter Of Fairness ................................................ 6

        B.    Mr. Farhane Waived Privilege Only As To Communications Concerning The
            Potential Denaturalization And Deportation Consequences Of His Plea ............. 10

    II.  Good Cause Exists To Limit Disclosure And Use Of Any Communications
    Disclosed By Trial Counsel In This Proceeding ............................................................ 15

        A.    Courts Regularly Impose Protective Orders Limiting Disclosure And Use Of
            Otherwise Privileged Information Disclosed In Habeas Proceedings ................. 15

        B.    The Court Should Limit Disclosure And Use Of Any Materials Disclosed By Mr.
            Farhane's Trial Counsel To This Proceeding ....................................................... 19

CONCLUSION................................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) (en banc) ...............................................6, 16, 17, 18, 19, 20

*Brennan Center v. U.S. Dep't of Justice*,
697 F.3d 184 (2d Cir. 2012)......................................................................................7

*Charbern Management Group LLC v. Borah, Goldstein, Altschuler, Nahins & Goidel, P.C.*,
2023 WL 3945599 (S.D.N.Y. June 12, 2023) ...................................................7

*Courtade v. United States*,
243 F. Supp. 3d 699 (E.D. Va. 2017) .......................................................18, 21

*Farhane v. United States*,
121 F.4th 353 (2d Cir. 2024) (en banc) ...............................................4, 10, 11

*Farhane v. United States*,
77 F.4th 123 (2d Cir. 2023) ....................................................................................4

*Giordano v. United States*,
2011 WL 1831578 (D. Conn. Mar. 17, 2011) ..................................................8

*Graziose v. United States*,
2004 WL 102699 (S.D.N.Y. Jan. 21, 2004) .......................................................6

*Greater Newburyport Clamshell Alliance v. Public Service Co.*,
838 F.2d 13 (1st Cir. 1988).......................................................................................9

*Harris v. United States*,
2016 WL 236988 (S.D.W. Va. Jan. 19, 2016) ..............................13, 15, 18, 21

*In re County of Erie*,
546 F.3d 222 (2d Cir. 2008).......................................1, 6, 7, 8, 12, 13, 14, 21

*In re Grand Jury Proceedings*,
219 F.3d 175 (2d Cir. 2000).................................................................7, 8, 13, 14

*In re Lott*,
424 F.3d 446 (6th Cir. 2005) ..................................................................9, 14, 21

*In re Terrorist Attacks on Sept. 11, 2001*,
454 F. Supp. 2d 220 (S.D.N.Y. 2006).......................................................15, 21

*John Doe Co. v. United States*,
    350 F.3d 299 (2d Cir. 2003)..................................................................6, 7, 8, 14

*Johnson v. Alabama*,
    256 F.3d 1156 (11th Cir. 2001) .........................................................................9

*McDonnell v. First Unum Life Insurance Co.*,
    2012 WL 13933 (S.D.N.Y. Jan. 4, 2012) ..................................................15, 21

*New York Times Co. v. U.S. Dep't of Justice*,
    939 F.3d 479 (2d Cir. 2019)..........................................................................6, 8

*Simmons v. United States*,
    390 U.S. 377 (1968)..........................................................................................19

*Strickland v. Washington*,
    466 U.S. 668 (1984)..........................................................................................18

*Swidler & Berlin v. United States*,
    524 U.S. 399 (1998)......................................................................................1, 21

*United States v. Concepcion*,
    2020 WL 5646339 (S.D.N.Y. Sept. 21, 2020)..............................................6, 8

*United States v. Lewis-Mcleod*,
    2016 WL 1298627 (N.D.N.Y. Jan. 5, 2016) ...................................................13

*United States v. Neill*,
    952 F. Supp. 834 (D.D.C. 1997) .....................................................................22

*United States v. Nicholson*,
    611 F.3d 191 (4th Cir. 2010) ..............................................................17, 18, 19

*United States v. Noriega*,
    764 F. Supp. 1480 (S.D. Fla. 1991) .................................................................22

*United States v. Pinson*,
    584 F.3d 972 (10th Cir. 2009) ...........................................................................9

*United States v. Ray*,
    2021 WL 5493839 (S.D.N.Y. Nov. 22, 2021)..................................................7

*United States v. Rice*,
    2020 WL 4015354 (M.D. Pa. July 16, 2020)...................................................18

*United States v. Sattar*,
    2003 WL 22137012 (S.D.N.Y. Sept. 15, 2003) ..............................................22

*United States v. Schulte,*
    2020 WL 133620 (S.D.N.Y. Jan. 13, 2020) ...........................................................7

*United States v. Straker,*
    258 F. Supp. 3d 151 (D.D.C. 2017)...........................................................18, 21

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981)...........................................................1, 21

*Waters v. United States,*
    302 A.3d 522 (D.C. 2023) ...........................................................17, 18, 19

*Weiss v. National Westminister Bank, PLC,*
    2008 WL 5115027 (E.D.N.Y. Dec. 3, 2008) ...........................................................13

*Williams v. BASF Catalysts, LLC,*
    2017 WL 3317295 (D.N.J. Aug. 3, 2017) ...........................................................15

## DOCKETED CASES

*Abderrahmane Farhane v. United States*, No. 18-CV-1193 (S.D.N.Y.) ...........................................3

*Ulbricht v. United States*, No. 19-CV-7512 (S.D.N.Y.) ...........................................8, 18, 21

*United States v. Farhane*, No. 18-CV-4347 (E.D.N.Y.)...........................................3, 20

## RULES

Fed. R. Civ. P. 26...........................................................15, 20

Fed. R. Evid. 502 ...........................................................15, 16

Rule 12, Rules Governing Section 2255 Proceedings ...........................................15

## OTHER AUTHORITIES

*Defining Subject Matter of Waiver*, 2 Attorney-Client Privilege in the U.S. § 9:83 (2024)...........7

## INTRODUCTION

The attorney-client privilege—"one of the oldest recognized privileges for confidential communications"—encourages "full and frank communication between attorneys and their clients." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (citations and quotation marks omitted). In doing so, it promotes the "broader public interest in the observance of law and the administration of justice." *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). These important interests, as the Second Circuit has explained, counsel against finding waivers of the attorney-client privilege. "[R]ules which result in the waiver of this privilege … should be formulated with caution." *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008).

Habeas petitioners who bring claims of ineffective assistance of counsel, like Mr. Farhane, may waive the privilege as to certain communications with counsel. But the scope of any waiver necessarily is narrow. If not, in attempting to vindicate their constitutional right to effective assistance of counsel, petitioners would risk not only waiving the protection of the significant interests served by the privilege but also prejudicing themselves in any later proceedings related to their criminal cases. To avoid these risks, the Second Circuit limits the scope of implied waivers like these to communications on which petitioners rely to assert their claims or to which the government requires access, as a matter of fairness, to defend against the claims. *See Erie*, 546 F.3d at 228-229.

Mr. Farhane's claim of ineffective assistance of counsel—premised on his counsel's failure to advise him of the denaturalization and deportation consequences of his plea—is narrow. So too is the extent to which he may have waived attorney-client privilege. Any waiver is limited only to communications with trial counsel regarding the potential denaturalization or deportation consequences of his plea. This is the advice (or lack of advice) on which Mr.

1

Farhane relies, and the government needs nothing more to defend against Mr. Farhane's claim. The Court should find that Mr. Farhane waived privilege only as to these communications.

Mr. Farhane's attempt to vindicate his constitutional right to counsel by waiving attorney-client privilege should not come at the great cost of a fair trial in later proceedings—either in this case or in his denaturalization case—by allowing the government to use the information learned here in those proceedings. To avoid that unfair result, courts routinely enter protective orders limiting to the habeas proceedings the disclosure and use of otherwise privileged communications. The Court should do the same here.

## BACKGROUND

### I.    Criminal Proceedings

Mr. Farhane is a naturalized citizen who immigrated to the United States nearly three decades ago. *See* Dkt. 232, Affidavit in Support of Motion to Vacate Plea and Sentence Pursuant to 28 U.S.C. § 2255 ("Farhane Aff.") ¶¶ 7, 15.[1]  He became a citizen in 2002, and two of his children were granted citizenship based on his naturalization. *See id*. ¶¶ 15-16.

In 2005, Mr. Farhane was arrested. Dkt. 1, Compl. ¶ 1 (Oct. 25, 2005). He was eventually indicted, including on a charge of conspiring to provide material support for terrorism. Dkt. 21, Superseding Indictment ¶¶ 5-7 (Feb. 8, 2006). The conduct underlying that charge allegedly occurred before his naturalization. *Id.* ¶¶ 5-6. Michael Hueston, who was aware that Mr. Farhane was a naturalized citizen, served as counsel during his criminal proceedings. *See* Farhane Aff. ¶ 21; Dkt. 23, Tr. of Detention Hr'g at 17:24-25 (Nov. 2, 2005) ("MR. HUESTON: He's an immigrant. Yes. He's a naturalized United States citizen.").

---

[1] Unless otherwise indicated, all citations to docket entries refer to *United States v. Abderrahmane Farhane*, No. 05-CR-673 (S.D.N.Y.).

Trial counsel negotiated a plea agreement on behalf of Mr. Farhane.  *See* Farhane Aff. ¶ 30.  Based on his counsel's advice, Mr. Farhane pleaded guilty in November 2006 to making false statements to law enforcement and conspiring to commit money laundering.  *See* Dkts. 85, 86.  Yet trial counsel never discussed with Mr. Farhane that denaturalization and deportation were possible consequences of his plea or otherwise advised him as to those risks.  Farhane Aff. ¶¶ 32-33, 35-36.  As far as Mr. Farhane is aware, trial counsel did not try to negotiate a plea agreement that would have avoided these consequences.  *Id.* ¶ 37.  At no point did trial counsel advise Mr. Farhane that two of his children could also lose their U.S. citizenship because of his guilty plea.  *Id.* ¶¶ 34, 36-37.[2]  And the possibility of denaturalization and deportation were neither raised at the plea hearing nor acknowledged in the plea agreement itself.  *See* Dkt. 231-1, Plea Agreement (Nov. 9, 2006); Dkt. 91, Tr. of Plea Hr'g (Dec. 13, 2006).

Mr. Farhane served eleven years in prison and was released early, owing to good conduct, in 2017.  Farhane Aff. ¶ 44.  A year after his release, the government filed a civil complaint to revoke Mr. Farhane's naturalization.  *See* Dkt. 1, Compl., Denaturalization Case.

## II.    Habeas Proceedings and Appeal

In December 2018, Mr. Farhane moved pursuant to 28 U.S.C. § 2255 to vacate his guilty plea, conviction, and sentence.  *See* Dkt. 220.  He alleged that his counsel provided constitutionally ineffective assistance by failing to warn him of the risks of denaturalization and

---

[2] Federal law provides for automatic denaturalization of children or spouses who derive their U.S. citizenship from an individual who is denaturalized if that individual obtained naturalization through concealment of a material fact or willful misrepresentation.  *See* 8 U.S.C. § 1451(d).  These grounds are among those alleged against Mr. Farhane in the denaturalization action pending in the Eastern District of New York.  *See* Dkt. 1, Compl. ¶¶ 73-80, *United States v. Farhane*, No. 18-CV-4347 (E.D.N.Y. Aug. 13, 2018) (the "Denaturalization Case").  Mr. Farhane does not allege that his trial counsel had a constitutional obligation to inform him of the immigration consequences that his children may face as a result of his plea.

deportation accompanying his guilty plea. *Id.* at 4-5. The Court denied Mr. Farhane's motion. *See* Dkt. 254.

Mr. Farhane appealed that decision. In August 2023, a divided panel of the Second Circuit affirmed, holding that denaturalization is not a direct consequence of pleading guilty and that therefore the Sixth Amendment imposes no obligation on attorneys to warn of that risk. *See Farhane v. United States*, 77 F.4th 123, 133 (2d Cir. 2023).

The Second Circuit agreed to rehear the case en banc and vacated the denial of habeas relief. *See Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024) (en banc). The court held that defense attorneys are obligated to inquire about and advise a naturalized U.S. citizen of any risk of deportation, following denaturalization proceedings, that accompanies a client's guilty plea, just as they do for noncitizen clients. *Id.* at 363.

The Second Circuit remanded the case for this Court to address Mr. Farhane's claim of ineffective assistance of counsel. *See id.* at 374. The en banc court instructed this Court to evaluate "whether Farhane's counsel's performance in 2006 was objectively unreasonable by analyzing relevant authorities on professional norms and providing Farhane's trial counsel with an opportunity to speak." *Id.* at 375 (emphasis omitted). It also instructed this Court to determine whether any failure to advise was prejudicial to Mr. Farhane's defense. *Id.* at 374-376.

## III.    Remand Proceedings

Because the Second Circuit directed that trial counsel be heard on remand, the parties proposed, and the Court ordered, that they file briefs concerning the extent to which Mr. Farhane waived attorney-client privilege by bringing his ineffective assistance claim, as the scope of this waiver affects the information that trial counsel will be compelled to disclose. Dkt. 288,

Scheduling Order, at 1-2.[3]  In particular, the Court directed the parties to address (a) the subject matter that trial counsel will be required to disclose and (b) whether otherwise privileged documents related to Mr. Farhane's petition must also be produced.  *Id.*

Mr. Farhane's Proposed Order regarding the extent to which he waived attorney-client privilege through his claim for ineffective assistance of counsel is attached to the Motion.  As the Proposed Order states, and for the reasons discussed below, Mr. Farhane waived privilege only as to written or oral communications (or lack thereof) between him and trial counsel concerning the potential denaturalization or deportation consequences of his guilty plea.  *See* Proposed Order, at 1-2.

Accordingly, the Court should direct trial counsel to give sworn testimony, in the form of an affidavit and (if necessary) at any evidentiary hearing, concerning only these subjects and to produce any written communications concerning only these subjects, subject to appropriate redactions to otherwise preserve attorney-client privilege.  *See id.* at 2.

## ARGUMENT

*First*, the Court should find that Mr. Farhane has waived privilege only as to communications with trial counsel concerning the potential denaturalization and deportation consequences of his plea.  *Second*, regardless of the scope of the waiver, the Court should enter a protective order limiting to this proceeding the disclosure and use of any testimony and written communications provided by trial counsel.

---

[3] Briefing was required only to the extent that the parties could not agree on the extent to which Mr. Farhane waived attorney-client privilege.  The parties have conferred regarding this issue, including exchanging draft proposed orders, and have been unable to reach agreement.

I.      **Mr. Farhane Waived Privilege Only As To Communications With Trial Counsel Regarding The Potential Denaturalization and Deportation Consequences Of His Plea**

A.      **Implied Waivers Extend Only To Materials On Which A Party Relies Or Which Must Be Disclosed As A Matter Of Fairness**

A habeas petitioner waives privilege over certain communications with counsel by bringing a claim for ineffective assistance of counsel. *See, e.g.*, *Graziose v. United States*, 2004 WL 102699, at *1 (S.D.N.Y. Jan. 21, 2004). That waiver of privilege is an "implied waiver." *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (implied waiver occurs when party "rel[ies] on privileged advice … to make his claim or defense" (emphasis omitted)); *United States v. Concepcion*, 2020 WL 5646339, at *3-4 (S.D.N.Y. Sept. 21, 2020) (describing implied waiver for claims of ineffective assistance of counsel).

In the Second Circuit, implied waivers are not unlimited in scope; instead, they are construed narrowly. A court defining the scope of such a waiver must impose a waiver "no broader than needed to ensure the fairness of the proceeding." *Concepcion*, 2020 WL 5646339, at *3 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (en banc)); *see also N.Y. Times Co. v. U.S. Dep't of Just.*, 939 F.3d 479, 496 (2d Cir. 2019) (explaining that implied waivers are "not nearly so broad" as some case law describes); *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) (noting that the Second Circuit has "cautioned against broad generalizations" in defining scope of implied waivers). Defining the scope of an implied waiver of attorney-client privilege too broadly "possess[es] the potential to weaken attorney-client trust[.]" *Erie*, 546 F.3d at 228. As a result, the Second Circuit warns that the contours of an implied waiver should "be formulated with caution." *Id.*

Consistent with that warning, the Second Circuit has explained that the scope of an implied waiver turns on reliance and fairness. Courts determine which communications with

counsel the party relies on to assert his claim and which communications the opposing party requires, as a matter of fairness, to defend against that claim. *Erie*, 546 F.3d at 229; *see also, e.g.*, *John Doe Co.*, 350 F.3d at 302 ("Forfeiture of this nature is justified by considerations of fairness to the adversary."). "The scope of the waiver is therefore only *initially defined* by the subject matter of the disclosed communication. Fairness is the critical determinant by which the scope is *refined*." *Defining Subject Matter of Waiver*, 2 Attorney-Client Privilege in the U.S. § 9:83 (2024).

It is not enough, according to the Second Circuit, that a party asserts a claim that relates to legal advice, nor is privilege waived merely because the "privileged information may be in some sense *relevant*[.]" *Erie*, 546 F.3d at 229. Instead, "a party must *rely* on privileged advice from his counsel to make his claim[.]" *Id.* Reliance is the "key to a finding of implied waiver" and "the essential element … in order to effect a waiver." *Id.* at 228-229; *see also Brennan Ctr. v. U.S. Dep't of Just.*, 697 F.3d 184, 207-208 (2d Cir. 2012) (applying *Erie*'s reliance standard); *United States v. Schulte*, 2020 WL 133620, at *4 (S.D.N.Y. Jan. 13, 2020) (noting that the "key" to finding implied waiver is that the party "*relies* on the privileged communication" (quoting *Erie*, 546 F.3d at 228)); *Charbern Mgmt. Grp. LLC v. Borah, Goldstein, Altschuler, Nahins & Goidel, P.C.*, 2023 WL 3945599, at *3 (S.D.N.Y. June 12, 2023) (implied waiver requires reliance on privileged communication); *United States v. Ray*, 2021 WL 5493839, at *6 (S.D.N.Y. Nov. 22, 2021) (same).

Courts must also determine which communications the opposing party requires, as a matter of fundamental fairness, to defend against a claim. *See Erie*, 546 F.3d at 229; *see also In re Grand Jury Proc.*, 219 F.3d 175, 183 (2d Cir. 2000) ("[C]ourts have limited the scope of [the] waiver based on the circumstances involved and overall fairness."); 2 Attorney-Client Privilege

in the U.S. § 9:83 ("Fairness is the critical determinant by which the scope is *refined*.").  That is because waiver "of this type is premised on the *unfairness* to the adversary *of having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." *John Doe Co.*, 350 F.3d at 304.  As the Second Circuit has explained, "the notion of unfairness" that underlies "any determination that a privilege should be forfeited" is limited. *Erie*, 546 F.3d at 229.  It implicates "only the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *Id.* (quotation marks omitted).  And courts must assess fairness "on a case-by-case basis, [which] depends primarily on the specific context in which the privilege is asserted." *In re Grand Jury Proc.*, 219 F.3d at 183.  That assessment requires "look[ing] for specific instances of unfairness that undermine the adversarial process" to find waiver of privilege over a communication.  *N.Y. Times*, 939 F.3d at 496.

Controlled by these precedents, district courts in the Second Circuit narrowly tailor the scope of implied waivers of privilege both within and without the habeas context.  *See, e.g.*, *Concepcion*, 2020 WL 5646339, at *3-4 (finding court "followed the contours of the implied waiver doctrine under Second Circuit law" by "impos[ing] a waiver no broader than needed"); Dkt. 17, Order re: Attorney-Client Privilege Waiver, *Ulbricht v. United States*, No. 19-CV-7512 (LGS) (S.D.N.Y. Dec. 20, 2019) (limiting waiver in habeas proceeding to "the matters alleged to constitute ineffective assistance of counsel"); *Giordano v. United States*, 2011 WL 1831578, at *3 (D. Conn. Mar. 17, 2011) ("[W]hen a prisoner files a claim alleging that his or her former attorney provided ineffective assistance, he[] or she implicitly waives the attorney-client

privilege *only* as to confidential information that is needed to defend against the prisoner's *specific claims*." (emphases added)).[4]

Indeed, a narrow waiver is particularly important in habeas cases. In these cases, such a waiver allows petitioners to fully and fairly litigate their claims without prejudicing them at later proceedings. Waiving privilege over communications "not at issue would undermine the privilege at other stages of the proceedings where the party asserts innocence as a defense," such as at a retrial if a petitioner is granted relief. *In re Lott*, 424 F.3d at 456. Because petitioners must impliedly waive privilege to bring an ineffective assistance claim, "[t]he scope of required disclosure should not be so broad as to effectively eliminate any incentive to vindicate [one's] constitutional right[.]" *Greater Newburyport Clamshell All. v. Pub. Serv. Co.*, 838 F.2d 13, 21-22 (1st Cir. 1988). "Demanding that a person waive any of these privileges in order to assert [his claim] is inconsistent with society's historical insistence that these confidential relationships deserve protection." *In re Lott*, 424 F.3d at 456.

---

[4] The Second Circuit has not directly addressed implied waiver specifically in the habeas context, but other circuits have and apply the same general principles. The Sixth Circuit, for example, has explained that in the habeas context "[i]mplied waivers are consistently construed narrowly." *In re Lott*, 424 F.3d 446, 453-454 (6th Cir. 2005) (reversing order finding waiver regarding discussions about petitioner's actions and potentially inculpatory statements). Similarly, the Tenth Circuit has held that the scope of waiver in habeas claims is limited only to "communications with [the petitioner's] attorney *necessary to prove or disprove his claim*." *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009) (emphasis added). And the Eleventh Circuit has followed a nearly identical approach, holding that "when a habeas petitioner … launches an attack on the reasonableness of his attorney's strategy in conjunction with a claim of ineffective assistance of counsel, he puts at issue his communications with counsel *relating to those strategic choices*." *Johnson v. Alabama*, 256 F.3d 1156, 1179 (11th Cir. 2001) (emphasis added).

9

**B.    Mr. Farhane Waived Privilege Only As To Communications Concerning The Potential Denaturalization And Deportation Consequences Of His Plea**

To succeed on his claim of ineffective assistance of counsel, Mr. Farhane must show that his counsel provided deficient performance by failing to advise him of the denaturalization and deportation consequences of his plea and that he was prejudiced by that deficient performance. *See Farhane*, 121 F.4th at 363, 376.  The communications with trial counsel on which Mr. Farhane relies to establish deficient performance and prejudice are limited to those concerning the potential denaturalization and deportation consequences of his plea, and the government needs no further communications as a matter of fairness.  As a result, under the Second Circuit's framework, Mr. Farhane has waived privilege over communications with trial counsel only regarding these potential consequences of his plea.

Performance:  Trial counsel's performance was deficient because he failed to advise Mr. Farhane fully and adequately about the consequences of his plea.  *See* Dkt. 229, Petitioner's Memorandum of Law in Support of Motion to Vacate Plea and Sentence ("Pet. Mem." or "Memorandum"), at 7-13.[5]  The issues about which he failed to advise—denaturalization and deportation consequences—are critically important to Mr. Farhane, and failure to advise about these issues is severely prejudicial to him.  But these issues are narrow.  And the communications (or lack thereof) on which Mr. Farhane relies to establish this deficient performance are equally narrow.  For example, Mr. Farhane points out that "[a]t no point … did [trial counsel] discuss with Mr. Farhane the possibility of denaturalization and deportation as a

---

[5] Mr. Farhane reserves the right to seek to amend or supplement his previously filed Memorandum based on evidence presented during the remand proceedings in this case.  *See Farhane*, 121 F.4th at 374-376 ("In the District Court, Farhane did not have a robust opportunity to develop a relevant record nor did the government have a chance to rebut it.  On remand, both will have that opportunity[.]").

10

consequence of his plea agreement, or advise him as to those risks." *Id.* at 3 (citing Farhane Aff. ¶¶ 32-33, 36).  He explains that trial counsel "failed to advise Mr. Farhane … that he could lose his United States citizenship by virtue of this plea." *Id.* at 9 (citing Farhane Aff. ¶ 32).  And according to Mr. Farhane, trial counsel did not "even broach this possibility with Mr. Farhane" or advise him of the risk that two of his children could lose their citizenship if he were denaturalized. *Id.* at 9-10 (citing Farhane Aff. ¶¶ 34, 36).  These communications are limited. They concern only the potential denaturalization and deportation consequences of his plea.[6]

> Prejudice:  Mr. Farhane does not rely on communications with trial counsel to make out prejudice.  *See* Pet. Mem. 14-17.  Tellingly, in his Memorandum, Mr. Farhane does not discuss his communications with trial counsel when explaining the prejudice caused by his counsel's performance.  *See id.*  Indeed, he cites his Affidavit discussing such communications only once. *See id.* at 16 (citing Farhane Aff. ¶¶ 38-42).  And to the extent those paragraphs in his Affidavit reveal communications (or lack thereof) with trial counsel, they are the same ones on which Mr. Farhane relies to show deficient performance—namely, that counsel failed to advise him concerning potential denaturalization and deportation consequences of his plea.  *See* Farhane Aff. ¶¶ 39-41.  Rather than relying on communications with trial counsel, Mr. Farhane instead looks to other evidence, such as contemporaneous record evidence, to show the prejudice he

---

[6] Mr. Farhane relies upon, and intends to rely upon, evidence other than his communications with trial counsel in support of his habeas claim, including to establish the objective unreasonableness of his trial counsel's performance.  *See, e.g.*, *Farhane*, 121 F.4th at 375 (performance inquiry requires evidence concerning "prevailing professional norms" at the time of Mr. Farhane's plea).

suffered.  *See, e.g.*, Pet. Mem. 15 (citing sentencing memorandum); *id.* (citing transcript of sentencing hearing).[7]

To be sure, Mr. Farhane's Affidavit submitted in support of his motion to vacate his plea discusses other conversations he had with counsel.  *See, e.g.*, Farhane Aff. ¶¶ 27-30.  Yet Mr. Farhane does not "*rely* on" those conversations with "his counsel to make his claim[,]" *Erie*, 546 F.3d at 229, including because those facts can be established by other evidence or are not essential to proving his claim.  For example, the fact that Mr. Farhane had "three options in response to the criminal charges" merely recites the full universe of possibilities in any criminal case.  Farhane Aff. ¶ 27.  His statement that he "wanted to go to trial" but was told by his counsel it was "not a good idea," *id.* ¶ 28, is not necessary to his claim, which, after all, is that he would have opted for trial had he known about the immigration consequences of a guilty plea.  The fact that Mr. Farhane's priority was to "have the shortest separation from [his] family," *id.* ¶ 29, can be established through contemporaneous record evidence and without any privileged conversations.  His statement relaying his trial counsel's generic advice that he would "negotiate the best possible deal," *id.* ¶ 30, is not relevant to his ineffective-assistance claim.  And the fact that his counsel advised him that he faced a long prison sentence, *id.*, is provable from record evidence other than his privileged conversations with counsel, such as from the plea agreement that both counsel and client reviewed before signing.

---

[7] Mr. Farhane takes a similar tack in his Reply.  *See* Dkt. 251, Reply Memorandum in Support of Motion to Vacate Sentence, at 14-19.  The limited portions of his Affidavit on which he relies concern either trial counsel's failure to advise him of consequences related to denaturalization and deportation, *see id.* at 15 (citing Farhane Aff. ¶¶ 32-36), 18 (citing Farhane Aff. ¶¶ 39-41); matters provable through evidence other than communications with counsel, *see id.* at 17 (citing Farhane Aff. ¶ 29); or matters unrelated to communications with counsel, *see id.* (citing Farhane Aff. ¶¶ 6-12).  He otherwise relies on contemporaneous record evidence and publicly available materials.  *See id.* at 16-19.

Even if such "privileged information may be in some sense *relevant*," it does not fall within the scope of the waiver because Mr. Farhane does not rely upon it in making his claim. *See Erie*, 546 F.3d at 229; *Weiss v. Nat'l Westminister Bank, PLC*, 2008 WL 5115027, at *2 (E.D.N.Y. Dec. 3, 2008) (noting that "relevance cannot serve as [a] proxy for the requisite showing of a party's reliance" on privileged advice from his counsel in making a claim or defense); *see also Harris v. United States*, 2016 WL 236988, at *3 (S.D.W. Va. Jan. 19, 2016) (directing trial counsel to respond "only to [the petitioner's] specific claims of ineffective assistance of counsel"). Because reliance on the privileged communication is the "key to a finding of implied waiver," *Erie*, 546 F.3d at 228-229, Mr. Farhane has not waived privilege over those communications. *See United States v. Lewis-Mcleod*, 2016 WL 1298627, at *2 (N.D.N.Y. Jan. 5, 2016) (finding implied waiver only with respect to communications defendant had with attorney regarding appeal where defendant alleged that counsel was ineffective in failing to file, or respond to requests to discuss, notice of appeal).

<u>Fairness</u>: Fairness must be assessed "on a case-by-case basis[] and depends primarily on the specific context in which the privilege is asserted." *In re Grand Jury Proc.*, 219 F.3d at 183. Here, the context in which Mr. Farhane is asserting privilege—a habeas claim of ineffective assistance of counsel limited to his counsel's failure to advise him concerning certain consequences of his plea—makes clear that the scope of the waiver must be correspondingly limited.

The government faces no unfairness by not having access to other conversations Mr. Farhane may have had with counsel, as Mr. Farhane is not relying on those conversations. Mr. Farhane alleges that his counsel never advised him of the denaturalization and deportation consequences of his plea. To the extent the government seeks to disprove this allegation, it

13

needs only communications concerning those potential consequences. The degree of "access to pertinent privileged" communications that the government needs to have a fair opportunity to "refute the claim," *John Doe Co.*, 350 F.3d at 304, is therefore limited. Nothing more is required, because Mr. Farhane has not relied on communications with counsel about any other subject to allege deficient performance or prejudice. The fact that the privilege remains intact as to other communications between Mr. Farhane and trial counsel does not "deny[] [the government] access to privileged material potentially capable of rebutting the assertion" that trial counsel failed to advise Mr. Farhane about the potential immigration consequences of his plea. *Erie*, 546 F.3d at 229 (quoting *John Doe Co.*, 350 F.3d at 306).

At the same time, it would be unfair to Mr. Farhane to have his counsel be directed to disclose the substance of further conversations he had with Mr. Farhane—particularly as Mr. Farhane faces potential re-trial of his criminal case if his petition is successful—where he brings a narrow claim for ineffective assistance of counsel. For example, if the government were to seek written and oral communications related to prior offense conduct, this would be clearly prejudicial to Mr. Farhane at a potential re-trial where that offense conduct was at issue. Fairness "depends primarily on the specific context in which the privilege is asserted," *In re Grand Jury Proc.*, 219 F.3d at 183, and the habeas context calls for a narrow waiver, *see In re Lott*, 424 F.3d at 453-454.

Accordingly, because the only communications with trial counsel on which Mr. Farhane relies are those concerning the potential denaturalization and deportation consequences of his plea and the government requires access to no more as a matter of fairness, the scope of Mr. Farhane's waiver of attorney-client privilege should be limited to such communications.

14

II.     **Good Cause Exists To Limit Disclosure And Use Of Any Communications Disclosed By Trial Counsel In This Proceeding**

A.     **Courts Regularly Impose Protective Orders Limiting Disclosure And Use Of Otherwise Privileged Information Disclosed In Habeas Proceedings**

Under Federal Rule of Civil Procedure 26(c), courts may, for good cause, enter protective orders limiting the extent to which discovery may be disclosed and used.  Fed. R. Civ. P. 26(c).[8] "For purposes of a protective order, 'good cause' is established when a party is able to show that a 'clearly defined, specific and serious injury' will occur in the absence of such an order." *McDonnell v. First Unum Life Ins. Co.*, 2012 WL 13933, at *1 (S.D.N.Y. Jan. 4, 2012) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)).

Federal courts have authority to issue protective orders that limit the effect of disclosure of privileged material in other proceedings.  Federal Rule of Evidence 502(d) provides that federal courts "may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding."  Fed. R. Evid. 502(d).  In proceedings where parties, including habeas petitioners, bring claims that depend on disclosure of otherwise privileged material, courts routinely issue protective orders under this rule limiting the disclosure and use of such material outside those proceedings.  *See, e.g.*, *Harris v. United States*, 2016 WL 236988, at *3-4 (S.D.W. Va. Jan. 19, 2016) (limiting waiver to habeas proceeding); *Williams v. BASF Catalysts, LLC*, 2017 WL 3317295, at *11 (D.N.J. Aug. 3, 2017) (otherwise privileged

---

[8] "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Rule 12, Rules Governing Section 2255 Proceedings.

information to be disclosed by plaintiff invoking advice-of-counsel defense should be "tightly defined and controlled" under Rule 502(d) (quotation marks and alternations omitted)).

Habeas petitioners bringing claims for ineffective assistance of counsel have a particular need for protective orders limiting the extent to which otherwise privileged communications can be disclosed or used.  Indeed, courts have consistently found that when a petitioner waives attorney-client privilege by bringing such a claim, a protective order is required to prevent further disclosure and later use of privileged communications outside of the habeas proceeding.

The Ninth Circuit's decision in *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) (en banc)—the seminal case on this issue—is instructive.  In *Bittaker*, the petitioner brought a habeas claim predicated on ineffective assistance of counsel, and the government appealed the district court's order that limited use of the privileged material to the habeas proceeding.  *Id.* at 717.  The Ninth Circuit affirmed entry of the protective order.  *Id.* at 728.  It reasoned that because the rationale supporting an implied waiver is rooted in fairness—namely, giving the opposing party an opportunity to defend against the claim—the waiver does not extend to "all time and all purposes," such as for a possible retrial or in some other proceeding.  *Id.* at 717.  Instead, courts should "impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Id.* at 720.[9]

_____

[9] Even though the *Bittaker* court said that habeas petitioners who bring ineffective-assistance claims "waive[] the attorney-client privilege as to all communications with [their] allegedly ineffective lawyer[s]," 331 F.3d at 716, the scope of the waiver in the habeas proceeding was not at issue in the case; instead, the court assessed the extent to which that waiver extended to other proceedings.  *Id.* at 716-717.  That passage is, therefore, dicta.  And in any event, the petitioner there "rais[ed] a multitude of claims, including a variety of ineffective assistance of counsel claims."  *Id.*  Such claims warrant a broad waiver of privilege, unlike the narrowly focused claim that Mr. Farhane presents here.  Indeed, the opinion explains that courts "must impose a waiver no broader than needed to ensure the fairness of the proceedings before it," *id.* at 720, citing cases where courts "closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question," *see id.* at 720-721 (collecting cases).

District courts, according to the *Bittaker* court, "should aim to restore [the defendant] to the position he would have occupied, had the first trial been constitutionally error-free." *Id.* at 722.  Allowing the prosecution to use privileged information and material disclosed in the habeas case during a subsequent proceeding "would assuredly not put the parties back at the same starting gate." *Id.* at 722-723.  Instead, it would likely "give the [government] a wholly gratuitous advantage." *Id.* at 724.  As a result, the Ninth Circuit found that it would amount to an abuse of discretion not to enter a protective order in these circumstances. *See id.* at 728.

*Bittaker* is not alone.  In fact, "every court to have considered this issue seems to agree with [its] approach." *Waters v. United States*, 302 A.3d 522, 534 (D.C. 2023).  In *Waters v. United States*, for example, the defendant challenged the government's use of otherwise privileged material that had been disclosed during post-conviction proceedings before his retrial. *Id.* at 525-526.  Following *Bittaker*, the court held that "the defendant should be restored to a position where they did not have to undertake [the] collateral proceedings in the first place," so the government was "precluded from using the otherwise privileged defense disclosures." *Id.* at 537.  And likewise in *United States v. Nicholson*, the petitioner alleged that his trial counsel was ineffective during sentencing due to a conflict of interest. *See* 611 F.3d 191, 194 (4th Cir. 2010). Reversing the district court's denial of the habeas petition, the Fourth Circuit noted that the petitioner on remand "should be entitled to a protective order prohibiting the Government from using privileged information revealed" in litigating the ineffectiveness claim. *Id.* at 217 (citing *Bittaker*, 331 F.3d at 717).  The aim of the court, the panel said, should be to restore the petitioner to the position they would have enjoyed had there been no constitutional error in the first place. *See id.*

17

Indeed, federal courts around the country routinely find the same and enter protective orders in these circumstances. *See, e.g.*, *United States v. Rice*, 2020 WL 4015354, at *5 (M.D. Pa. July 16, 2020) (ordering that "[a]ny information or documentation disclosed by trial counsel shall be limited exclusively for use in this Section 2255 proceeding and any appeal that follows"); Dkt. 17, *Ulbricht*, No. 19-CV-7512 (limiting waiver to habeas proceeding); *Courtade v. United States*, 243 F. Supp. 3d 699, 705 (E.D. Va. 2017) (finding a protective order is an "entirely justified" accommodation between petitioner's interest in fair adjudication and a "retrial untainted by constitutional errors"); *United States v. Straker*, 258 F. Supp. 3d 151, 158-159 (D.D.C. 2017) (applying *Bittaker* and granting petitioner's "request to limit the use of the disclosed information to the ineffective assistance proceeding, including any appeal"); *Harris*, 2016 WL 236988, at *4 (finding that "a protective order prohibiting the subsequent and unfettered use of privileged information disclosed in a section 2255 proceeding is entirely justified").

Failure to do so would impede the ability of habeas petitioners to vindicate their constitutional right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). It would force a petitioner to make a "'painful choice'—a choice between 'asserting his ineffective assistance claim and risking a trial [if successful on his claim] where the prosecution can use against him every statement he made to his first lawyer,' or 'retaining the privilege but giving up his ineffective assistance claim.'" *Nicholson*, 611 F.3d at 217 (quoting *Bittaker*, 331 F.3d at 723). Such a choice, courts have observed, runs afoul of the Supreme Court's admonition that it is "intolerable that one constitutional right should have to be surrendered in order to assert another." *Simmons v. United States*, 390 U.S. 377, 394 (1968);

*see, e.g.*, *Bittaker*, 331 F.3d at 723 & n.7 (this choice "would violate the spirit, and perhaps the letter, of" *Simmons*); *Waters*, 302 A.3d at 535 (quoting *Simmons*, 390 U.S. at 394).

**B.    The Court Should Limit Disclosure And Use Of Any Materials Disclosed By Mr. Farhane's Trial Counsel To This Proceeding**

Consistent with these precedents, the Court should enter a protective order limiting disclosure and use of privileged communications disclosed by trial counsel.  In particular, the Court should enter an order that (1) limits the use of communications disclosed by trial counsel to this proceeding; (2) prohibits the government from accessing, consulting, or using any such communications in any other proceeding, including but not limited to any retrial of Mr. Farhane and the Denaturalization Case; (3) requires any such communications filed in this proceeding to be filed under seal; and (4) prohibits individuals participating for the government in this proceeding from participating in or communicating about this matter with any individuals participating for the government in (a) any re-prosecution of Mr. Farhane and (b) the Denaturalization Case.

Absent such a protective order, Mr. Farhane would face the unacceptable choice "between a compromised retrial and forgoing a challenge to effective assistance." *Waters*, 302 A.3d at 535.  In fact, for Mr. Farhane, the stakes of that choice are even greater.  It is not only his potential retrial that would be compromised; his denaturalization proceedings would be compromised, too.  In those proceedings, the government alleges that Mr. Farhane unlawfully procured his naturalization when he answered that he had not committed any crime for which he had not been arrested because the conduct underlying one count to which he pleaded guilty allegedly occurred before he gave that answer.  Dkt. 1, Compl. ¶¶ 65-80, Denaturalization Case. Because the conduct underlying the Denaturalization Case is related to that underlying the criminal case, disclosure of privileged communications by trial counsel would likely severely

19

prejudice Mr. Farhane in the Denaturalization Case.  Without a protective order, Mr. Farhane

must take the unfair risk that—simply by seeking to vindicate his constitutional right to effective

assistance of counsel—communications disclosed by his trial counsel here could be used either

in a potential retrial of his criminal case or in the Denaturalization Case (or both).  Indeed, Mr.

Farhane would confront a perverse scenario in which he prevails on his habeas claim but is

actually left worse off than before, not "restore[d] to the position he would have occupied, had

the first trial been constitutionally error-free."  *Bittaker*, 331 F.3d at 722.

      For those reasons, Mr. Farhane has good cause for a protective order under Federal Rule

of Civil Procedure 26(c).  Absent such an order, the privileged communications at issue could be

wielded against Mr. Farhane in a subsequent retrial, undermining his ability to mount a defense

and offering the government a tactical advantage by virtue of the unconstitutionality of the

original proceeding.  And the peril for Mr. Farhane is compounded by the ongoing

Denaturalization Case against him and the likelihood that the privileged communications at issue

could prove relevant.  Due to these risks, disclosure will result in a "clearly defined, specific and

serious injury" to Mr. Farhane.  *McDonnell*, 2012 WL 13933, at *1 (quoting *In re Terrorist*

*Attacks*, 454 F. Supp. 2d at 222).

      It is no surprise that courts confronting habeas petitioners like Mr. Farhane, including in

this district, have found that protective orders "are necessary to protect [the petitioner's] future

interests."  *Harris*, 2016 WL 236988, at *4; *see also* Dkt. 17, *Ulbricht*, No. 19-CV-7512

(ordering that petitioner's trial counsel give sworn testimony and that privilege is not waived in

other proceedings).  Such orders ensure that petitioners are not forced to pursue their ineffective

assistance claims only by risking retrials where the government has access to their

communications with counsel.  *See Harris*, 2016 WL 236988, at *4.

The importance of a protective order is not diminished even if the Court finds only a narrow waiver of attorney-client privilege.  That privilege, as the Supreme Court has observed, "promote[s] broader public interests in the observance of law and the administration of justice." *Swidler*, 524 U.S. at 403 (quoting *Upjohn*, 449 U.S. at 389).  Protective orders limiting disclosure and use of otherwise privileged communications minimize the extent to which these interests are undermined when privilege is waived even only to a limited extent.  In doing so, they diminish "the potential to weaken attorney-client trust," *Erie*, 546 F.3d at 228, and reflect "society's historical insistence that these confidential relationships deserve protection," *In re Lott*, 424 F.3d at 456.  For that reason, courts adjudicating ineffective-assistance claims find that narrow waivers do not lessen the need for protective orders, nor do protective orders lessen the need for narrow waivers.  *See, e.g.*, Dkt. 17, *Ulbricht*, No. 19-CV-7512 (limiting scope of waiver and use of disclosed materials); *Straker*, 258 F. Supp. 3d at 154 (same); *Courtade*, 243 F. Supp. 3d at 702 (same).

For a protective order to achieve its desired effect here, it must also prohibit any individuals for the government working on this case from working on any retrial of Mr. Farhane or the Denaturalization Case or otherwise collaborating with counterparts handling those matters. The risk of prejudice to Mr. Farhane comes not only from the formal introduction of evidence; it comes too from the government's knowledge of his privileged communications with trial counsel.  It would be impossible for individuals working on this proceeding to prevent what they learn from otherwise privileged communications here from informing the approach that the government will take in any other proceeding involving Mr. Farhane.

Imposing this sort of firewall is hardly unprecedented in federal court.  For example, when handling potentially privileged material, prosecutors routinely rely on so-called "taint

21

teams," which similarly operate to protect defendants from the government's inadvertent use of privileged material. *See, e.g.*, *United States v. Sattar*, 2003 WL 22137012, at *20 (S.D.N.Y. Sept. 15, 2003) (describing use of government taint team as "particularly appropriate"), *aff'd sub nom. United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009); *United States v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997) (detailing how the government "took precautions to shield the prosecution team from viewing potentially privileged materials"); *United States v. Noriega*, 764 F. Supp. 1480, 1489 (S.D. Fla. 1991) (explaining government's steps to screen out potentially privileged material).

Accordingly, Mr. Farhane is entitled to a protective order to ensure that he is not prejudiced in any subsequent retrial or the Denaturalization Case merely because he received constitutionally deficient assistance of counsel.

## CONCLUSION

The Court should find that Mr. Farhane has waived privilege only as to written or oral communications (or lack thereof) with trial counsel concerning the potential denaturalization or deportation consequences of his plea. Further, regardless of the scope of the waiver, the Court should enter a protective order limiting the disclosure and use of any privileged communications disclosed by trial counsel.

[SIGNATURE PAGE FOLLOWS]

Dated:  March 14, 2025

Respectfully submitted,

**CLEAR PROJECT**
**MAIN STREET LEGAL SERVICES, INC.**

/s/ Ramzi Kassem
Ramzi Kassem
Naz Ahmad
CUNY School of Law
2 Court Square
Long Island City, NY  11101
T: (718) 340-4558
E: ramzi.kassem@law.cuny.edu
E: naz.ahmad@law.cuny.edu

**WILMER CUTLER PICKERING HALE AND**
**DORR LLP**

/s/ Alan E. Schoenfeld
Alan E. Schoenfeld
7 World Trade Center
250 Greenwich Street
T: (212) 937-7294
F: (212) 230-8888
E: alan.schoenfeld@wilmerhale.com

*Counsel for Defendant / Petitioner*

23

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this memorandum of law complies with the type-volume limitations of Local Civil Rule 7.1(b) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Rule 2(B) of the Individual Practices of Judge Loretta A. Preska.

1.      Exclusive of the Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service, and signature blocks, this memorandum of law contains 6,971 words.

2.      This brief has been prepared in double-spaced type face using Microsoft Word for Microsoft 365 MSO in 12-point Times New Roman font. The undersigned has relied on the word count feature of this word processing system in preparing this certificate.

DATED: March 14, 2025

/s/ Alan E. Schoenfeld
Alan E. Schoenfeld

*Counsel for Defendant / Petitioner*

**CERTIFICATE OF SERVICE**

I, Alan E. Schoenfeld, hereby certify that on March 14, 2025, I caused a copy of the

foregoing document to be served by ECF upon the counsel for Respondent named below:

> Jun Xiang
> Assistant United States Attorney
> The Jacob K. Javits Federal Building
> 26 Federal Plaza
> New York, NY 10278
> jun.xiang@usdoj.gov

DATED:  March 14, 2025

/s/ Alan E. Schoenfeld
Alan E. Schoenfeld

*Counsel for Defendant / Petitioner*